**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| ANDREW E. DILLDINE, | : | Case No. 3:18-cv-00178 |
| Plaintiff, | : | District Judge Thomas M. Rose |
| vs. | : | Magistrate Judge Sharon L. Ovington |
| AMERICAN AIRLINES, INC., et al., | : | |
| Defendants. | : | |

# REPORT AND RECOMMENDATIONS[1]

## I. Introduction

Plaintiff Andrew I. Dilldine flew from Dayton, Ohio to North Carolina on a regional jet operated by Defendant PSA Airlines, Inc. Defendant PSA is a wholly owned subsidiary of Defendant American Airlines, Inc. Dilldine's flight did not go well. Defendants allegedly damaged his personal property—including his medications—and allegedly caused him serious and permanent personal injury that required hospitalization.

Dilldine's Complaint advances two claims: negligence and breach of a contract of carriage. Notably, his negligence claim rests on his assertion that Defendants "owed specific duties to [him] from the Air Carrier Access Act…," and related regulations. (Doc. #2, *PageID* #31, ¶15).

Defendants contend—and Dilldine disagrees—that dismissal of Dilldine's claims is

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

warranted under Fed R. Civ. P. 12(b)(6).

## II.     Rule 12(b)(6)[2]

Dismissal of a complaint under Rule 12(b)(6) is appropriate when it "lacks 'sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Brent v. Wayne Cnty. Dep't of Human Services*, 901 F.3d 656, 675-76 (6th Cir. 2018) (quoting *Marie v. Am. Red Cross*, 771 F.3d 344, 361 (6th Cir. 2014) (citation omitted). Facial plausibility is present if the moving party "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678.

Generally, where "matters outside the pleadings are presented to and not excluded by the court," a Rule 12(b)(6) motion must be converted to a motion for summary judgment under Rule 56. *See* Fed. R. Civ. P. 12(d). Yet in limited situations, the Court may take into account materials outside the complaint such as public records, exhibits attached to the complaint or to a defendant's motion to dismiss, and "items appearing in the record of the case …." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)). This extra-pleading study is permissible—and conversion to summary-judgment is unnecessary—when public records, exhibits, or other items are "referred to in the Complaint and are central to the claims contained therein." *Id.*

---

[2] Defendants filed an Answer in response to Dilldine's Complaint. They subsequently filed their presently pending Rule 12(b)(6) Motion. Their Motion "was more appropriately captioned a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). Nevertheless, the standard of review is the same under both Rule 12(b)(6) and 12(c)." *Kuczak v. City of Trotwood Police Department*, 3:13cv101, 2016 WL 4987170, at *3 (S.D. Ohio 2016) (Rice, D.J.) (citing *Lindsay v. Yates*, 498 F.3d 434, 437 n.5 (6th Cir. 2007)); *see Fritz v. Charter Tp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010).

Defendants have attached to their Rule 12(b)(6) Motion a document referred to as "the American Airlines Conditions of Carriage …" that was in effect on the date (May 4, 2017) Dilldine flew to North Caroline with his ill-fated medications. (Doc. #12, *PageID* #102, ¶2). The Complaint refers to this document, and the parties agree that it is central to Dilldine's claim for breach of contract of carriage. (Doc. #12, *PageID* #86; Doc. #13, *PageID* #153). It is therefore proper to consider it as part of Defendants' Rule 12(b)(6) Motion without converting it into a motion for summary judgment. *See Bassett*, 528 F.3d at 430.

Because Defendants seek dismissal under Rule 12(b)(6), the Court accepts as true the Complaint's factual allegations, construes the Complaint in Dilldine's favor, and draws all reasonable inferences in his favor. *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016). Reading his Complaint in the above manner and considering its attached documents reveals the following.

### III.   Dilldine's Complaint

Dilldine purchased a ticket for an American Airlines flight that departed on May 4, 2017 from Dayton International Airport and traveled to Charlotte Douglas International Airport in North Carolina. He boarded his flight with his "life sustaining assistive devices, specifically multiple sterile Total Parenteral Nutrition bags, and multiple vials of liquid vitamins and other medications [], all of which are medications essential to [his] ability to function and receive nourishment." (Doc. #2, *PageID* #30). The Complaint does not identify Dilldine's medical problems. Defendants state that he "is a severely immunocompromised cancer patient who, at the time of his flight, had only recently been

3

discharged from the hospital after a serious bout of pancreatitis." (Doc. #15, *PageID* #169).

Dilldine stored his medication and ice packs in a clean cooler that complied with the size and weight restrictions for carry-on items. His medication cooler was also secured in compliance with the procedures mandated by the Transportation Security Administration (TSA)—it was marked as "medical supplies" and had been inspected by TSA and taped shut. (Doc. #2, *PageID* #s 30-31).

Despite taking these steps, Dilldine encountered a problem when he reached the boarding gate: An American Airlines or PSA employee told him that his cooler would not fit in the aircraft's overhead compartments "and would have to be checked." *Id*. at 31. Dilldine informed the employee that he was disabled and that his cooler contained life-sustaining assistive devices and needed to be kept clean and cold. Dilldine followed the employee's instructions. The employee tagged his cooler, and he watched other American Airlines and PSA employees load the cooler onto the aircraft. This solved the immediate problem about where to store Plaintiff's cooler and medication. But another problem soon arose.

Upon Dilldine's arrival in North Carolina, his cooler was empty. It had been "manually opened and/or unzipped, the tape removed, the plastic bags were missing." *Id*. at 31. Most significantly, his "multiple bags and vials of Medication and ice packs were strewn throughout the baggage storage area of the aircraft, baggage cart, and/or on the unloading equipment, such that they were not maintained in a cold, sterile environment and were contaminated." *Id*.

The haphazard storage of the cooler and its contents—and the resulting

4

contamination of Dilldine's medication—caused him to "sustain[ ] property damage and severe personal injuries, including a severe infection requiring hospitalization…." *Id*. He consequently "incurred medical expenses, physical pain, and mental anguish." *Id*.

IV. **Discussion**

   A. <u>**Negligence**</u>

Defendants contend that the ACAA bars Dilldine's negligence claim because the ACCA does not create a private right of action; instead, "Congressional intent in enacting the ACCA was to create a powerful administrative structure for its implementation and enforcement." (Doc. #12, *PageID* #94). Defendants point out Dilldine availed himself of this administrative remedy by filing a Complaint with the Department of Transportation (DOT). And Defendants argue that there is no statutory provision for a private right of action after he pursued his Complaint with the DOT. (The record lacks information about the current status of those administrative proceedings or any administrative remedy Dilldine might have received.)

Dilldine rejects Defendants' foundational assertion that he is asserting a private cause of action under the ACCA itself. He explains that he cited the ACCA to establish the duty Defendants owed him and their breach of that duty—essential elements of his negligence claim.

On (and since) the date Dilldine flew to North Carolina, the ACAA prohibited air carriers from discriminating against an "otherwise qualified individual" on the ground that "the individual has a physical or mental impairment that substantially limits one or more of life's major activities." 49 U.S.C. § 41705(a)(1) (effective December 12, 2003).

5

Defendants do not dispute that "Dilldine is a qualifying passenger as contemplated by the ACAA, in view of the long-term, unfortunate illnesses which he was courageously battled." (Doc. #12, *PageID* #92). Rather, Defendants contend that Dilldine does not have a private right of action under the ACAA pursuant to *Alexander v. Sandoval*, 532 U.S. 275 (2001). They emphasize that since *Sandoval*, not a single federal court has found that a private right of action is available under the ACAA.

Dilldine, however, is not advancing a private cause of action under the ACAA. (Doc. #23, *PageID* #150). He asserts his negligence claim under state common law, and he does not seek damages under the ACCA.

"Ohio maintains the traditional elements for negligence: duty, breach, causation, and harm."[3] *Ross v. PennyMac Loan Services LLC*, 761 F. App'x 491 (6th Cir. 2019) (citing *Stefansky v. Cantina Laredo Columbus/Nashville, L.P.*, 72 N.E.3d 97, 103 (Ohio Ct. App. 2016)) (other citation omitted). Dilldine's negligence claim derives from duties arising under the ACAA and its accompanying regulations. These duties concern elements one and two of his negligence. Yet he must still establish causation and harm to ultimately prove his negligence claim. *See id*. In lockstep with this, Ohio law carefully distinguishes private statute-based causes of action from negligence claims:

> A plaintiff attempting to assert a private right of action under a statute is asserting that a violation of the particular statute, standing alone, entitles her to a remedy. *Fawcett v. G.C. Murphy & Co.,* 46 Ohio St.2d 245, 348 N.E.2d 144, 146 (Ohio 1976)[4]; *Cort v. Ash,* 422 U.S. 66, 77, 95 S.Ct. 2080, 45 L.Ed.2d 26

---

[3] The parties do not discuss which state's common law applies to Dilldine's negligence claim. Applying Ohio common law is therefore presently warranted.[3] *Savedoff v. Access Group, Inc.*, 524 F.3d 754, 762 (6th Cir. 2008) ("We generally apply the substantive law of the forum state to actions brought pursuant to our diversity jurisdiction." (citing *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817 (1938)).

[4] *superseded by statute on other grounds, see Kohmescher v. Kroger Co.*, 61 Ohio St.3d 501, 503 n.2 (1991).

> (1975). Negligence *per se,* on the other hand, merely satisfies the duty and breach elements of a negligence claim. *Pond v. Leslein,* 72 Ohio St.3d 50, 647 N.E.2d 477, 479 (Ohio 1995); *Sikora* [*v. Wenzel*], 88 Ohio St.3d 493, 727 N.E.2d [1277,] 1281 [(Ohio 2000)]. The plaintiff still must meet her proofs on proximate cause and damages. *Pond,* 647 N.E.2d at 479.

*Parker v. Miller*, No. 2:16-cv-1143, 2018 WL 3743981, at *7 (S.D. Ohio 2018) (Smith, D.J.) (footnote added) (quoting *Thornton v. State Farm Mut. Auto Ins. Co.*, No. 1:06-CV-00018, 2006 WL 3359448, at *14 (N.D. Ohio 2006).

As in *Parker*, Dilldine has simply asserted a straightforward common-law negligence claim whose first two elements, he contends, may be satisfied by Defendants' duties arising under the ACAA and its regulations, and breaches thereof. *See id.*; *see also* Doc. #2, ¶s 17-19. In this situation, "[t]he availability of a private right of action under the regulations is … irrelevant." *Parker*, 2018 WL 3743981, at *7; *cf. Gilstrap v. United Airlines, Inc.*, 709 F.3d 995, 998 (9th Cir. 2013) (declining to determine if the ACAA provides a private cause of action "because Gilstrap does not allege a cause of action under the ACAA.").

Still, it remains to be seen whether Dilldine may rest his common-law negligence claim upon duties owed him under the ACAA and its regulations. This is a question of preemption.

"There is no doubt that Congress may withdraw specified powers from the States by enacting a statute containing an express preemption provision." *Arizona v. United States*, 567 U.S. 387, 399, 132 S.Ct. 2492, 2500-01 (2012). "Courts also will find that Congress has preempted state law in at least two other circumstances. 'First, the States are precluded from regulating conduct in a field that Congress, acting within its proper authority, has determined must be regulated by its exclusive governance.' 'Second, state laws are

7

preempted when they conflict with federal law.'" *Mik v. Federal Home Loan Mortg. Corp.*, 743 F.3d 149, 164 (6th Cir. 2014) (quoting, in part, *Arizona,* 132 S.Ct. at 2501).

Defendants do not argue that the ACAA and the Federal Aviation Act (FAA) expressly preempt Dilldine's common-law negligence claim.[5] *See* Doc. #15, *PageID* #174. They instead argue that the ACAA implicitly preempts his negligence claim. They propose that "Congress … intended federal law to completely occupy the field of aviation safety, and allowing a state-based negligence claim, even where one purportedly applies a federal standard of care, runs the risk of creating conflicting bodies of law in various jurisdictions, frustrating the fundamental purpose of the FAA and ACAA in ensuring consistency in regulation of the air transportation system." *Id*. at 175.

There is merit in Defendants' reasoning as to aviation safety under Sixth Circuit case law: "We agree with the Third Circuit's reasoning in *Abdullah* [*v. American Airlines, Inc*., 181 F3d 363 (3rd Cir. 1999)] that federal law establishes the standards of care in the field of aviation safety and thus preempts the field from state regulation." *Greene v. B.F. Goodrich Avionics Systems, Inc*., 409 F.3d 784, 795 (6th Cir. 2005). There is no doubt, then, that Dilldine's negligence claim is preempted to the extent he grounds it on standards of care for aviation safety entrenched in the ACAA and its regulations.

This leads to a dispositive question: Whether Dilldine's negligence claim concerns matters of aviation safety? *Cf. Martin ex rel. Heckman v. Midwest Express Holdings, Inc.*, 555 F.3d 806, 811 (9th Cir. 2009) ("when the agency issues 'pervasive regulations' in an

---

[5] The ACAA amended the FAA's anti-discrimination provisions in 1986. *See Gilstrap,* 709 F.3d at 999-1000.

area, like passenger warnings, the FAA preempts all state law claims in *that* area." *Id.* at 811. (emphasis in original). Defendants say, yes. They contend that Dilldine's "claims necessarily implicate American's employee training standards, cabin baggage policies[,] and cargo baggage policies, all of which have unmistakable bearing on safety." (Doc. #15, *PageID* #174).

Defendants are correct. Dilldine's Complaint connects certain duties of due care to federally regulated aviation activities—loading, transporting, stowing, and offloading baggage, including assistive devices and/or medications for individuals, particularly Dilldine, who are under a disability. *See* Doc. #2, *PageID* ¶16. The need for uniform federal regulatory control over these activities derives from the dangers to persons and property posed by haphazard performance of these activities by airline personnel. This need becomes acute as to disabled airline passengers whose health and well-being depend upon assistive devices or medications.

Viewed another way—what pilot wants to fly a passenger jet without the baggage well secured? Certainly, no well-trained pilot, given the dangers improperly loaded and unsecured aviation cargo present to the airworthiness of aircraft and, in turn, to life and limb of anyone onboard the aircraft while it is in flight. These dangers increase for disabled passengers, like Dilldine, who depend on medications or other assistive devices to treat serious health problems, to maintain their abilities to perform daily activities, or to stay alive. This is doubtlessly why one of the ACAA regulations Dilldine relies on to support his negligence claim requires carriers to return assistive devices to passengers in the condition in which the carrier received them. *See* 14 C.F.R. 382.129; *see also* Doc. #2, ¶ 17.

9

Compliance with this regulation promotes safety of disabled passengers while non-compliance threatens pernicious outcomes—as Dilldine allegedly experienced.

Accordingly, the ACAA and its accompanying regulations preempt Dilldine's state common-law negligence claim.

### B. Breach of Contract of Carriage

Dilldine asserts in his Complaint that the ticket he purchased before his flight created a contract of carriage with the express or implied duty to safely deliver him and his medications and assistive devices to Charlotte, North Carolina. He claims that Defendants breached these duties and as direct result, he suffered injuries, losses, and damages.

Defendants contend that Texas law applies to Dilldine's breach of contract claim under a choice-of-law provision in the contract of carriage. The contract of carriage does indeed identify Texas law as governing its terms and interpretations. (Doc. #12, *PageID* #128). Such choice of law provisions in a contract are generally enforced in diversity cases. *See Savedoff*, 524 F.3d at 762. Dilldine does not address whether Texas law applies to his breach-of-contract claim and does not object to Defendants' reliance on Texas law. It is therefore assumed for present purposes that Texas law applies to his breach-of-contract claim.

Defendants contend that its Conditions of Carriage[6] limits Dilldine's recovery "for loss, damage or delayed delivery of checked baggage, including transfer baggage, to the actual value of the baggage or $3,500, whichever is less …." (Doc. #12, *PageID* #88)

---

[6] The contract identified in Dilldine's Complaint contains a section titled, "Conditions of Carriage."

(quoting *PageID* #114). Relying on *Casas v. American Airlines, Inc.*, 304 F.3d 517 (5th Cir. 2002), Defendants contend that the Fifth Circuit Court of Appeals have found baggage-liability limitations within airline contracts of carriage valid and enforceable.

Dilldine finds distinguishing features in *Casas* and argues that Defendants are required to show—and have not done so—that they provided him with adequate notice of the monetary limitations in Defendants' contract of carriage. (Doc. #13, *PageID* #s 154-55)

The parties' arguments overlook that although the contract of carriage generally limits Defendant American's liability for loss, damage or delayed delivery of checked baggage, these limitations are subject to an exception: "Customers with disabilities travelling with wheelchairs or other assistive devices are exempt from liability restrictions for loss, damage or delays to these items." (Doc. #12, *PageID* #115). This provision applies in the present case for several reasons. First, it is doubtlessly included in the contract of carriage to temper its liability limitations so as not to run afoul of the ACAA's anti-disability discrimination provisions and goals.

Second, Dilldine's "assistive devices," including his medications, fit within this exemption from liability limitations. *See* 14 C.F.R. 382.3 (defining "assistive device" to include "any piece of equipment that assists a passenger with a disability to cope with the effects of his or her disability. Such devices are intended to assist a passenger with a disability to hear, see…, or perform other functions of daily life, and may include medical devices and medications.").

Third, Dilldine's Complaint asserts sufficient facts to plausibly show that at least his medications are assistive devices. He alleges that he boarded the flight with "life sustaining

11

assistive devices, specifically multiple sterile Total Parenteral Nutrition bags, and multiple vials of liquid vitamins and other medications [], all of which are medications essential to [his] ability to function and receive nourishment." (Doc. #2, *PageID* #30). He further alleges that his medications were "strewn throughout the baggage storage area and were contaminated." *Id*. at 31. These allegations bring his breach-of-contract claim within the contract of carriage's exclusion from its liability limitations for loss, damage or delays to a Dilldine's assistive devices.

* * *

One final disagreement remains. Dilldine's Complaint seeks to recover—as a direct result of Defendants' breach of contract—his "injuries, losses and damages …." (Doc. #2, *PageID* #34). These damages partially include his "reasonable and necessary medical expenses in excess of $82,547.32." *Id*.

Defendants realize that Dilldine seeks personal-injuries damages, including his medical expenses, as a remedy for the purported breach of contract. Such damages, according to Defendants, are consequential in nature and inconsistent with controlling Texas law and forbidden under the terms of the Conditions of Carriage.

Dilldine asserts that his breach-of-contract damages, including his medical expenses, are direct and non-consequential. He finds that "Texas courts have construed damage distinctions as being fluid." (Doc. #13, PageID #156).

The cases on which the parties rely shine a dim light on whether, under Texas law, the remedy of personal-injury damages (such as Dilldine's medical expenses) is available for a breach of contract. Instead, the cases discuss the distinctions between direct and

consequential damages in situations other than the remedies for breach of contract. Defendants state that actual damages under Texas common law are either direct or consequential. In support, they cite a concurring opinion in *Henry S. Miller Co. v. Bynum*, 836 S.W.2d 160, 163 (Tex. 1992) (Phillips, C.J., concurring). *Bynum*, however, involved the damages available for violations of the Texas Deceptive Trade Act, Tex. Bus. & Com. Code § 17.41, *et seq.*, and did not address whether personal-injury damages (like Dilldine's medical expenses) are available for a breach of contract. *See id*. at 162-63. Defendants' remaining cases either involved the Texas Deceptive Trade Act or breach-of-contract claims. None of their cases involved whether personal-injury damages are available, or were awarded, for breach of contract. *See Southwind Aviation, Inc. v. Avendano,* 776 S.W.2d 734 (Tex. App. 1989); *see also Haynes & Boone v. Bowser Bouldin, Ltd*., 896 S.W.2d 179, 182 (Tex. 1995), *abrogated by Ford Motor Co. v. Ledesma*, 242 S.W.3d 32 (Tex. 2007); *Mead v. Johnson Group, Inc*., 615 S.W.2d 685 (Tex. 1981); *Southwestern Bell Telephone Co. v. DeLanney*, 809 S.W.2d 493, 494-95 (Tex. 1991) (discussing breach of contract or negligence; no discussion of personal-injury damages flowing from a breach of contract); *Airborne Freight Corp., Inc. v. C.R. Lee Enterprises, Inc*., 847 S.W.2d 289, 293-96 (Tex. App. 1992) (discussing tort or contract; no discussion of personal-injury damages flowing from a breach of contract).

The case Dilldine cites regarding breach-of-contract damages suffers the same silence on the issue of whether Texas common law allows personal-injury damages (like Plaintiff's medical expenses) for breach of contract. *See DaimlerChrysler Motors Co., LLC v. Manuel*, 362 S.W.3d 160, 179-81, 183-85 (Tex. App. 2012).

13

Without a more specific discussion in parties' cases, or in the parties' memoranda, it is premature to resolve whether, as a matter of Texas law, Dilldine may recover his personal-injury damages, including his medical expenses, under a breach-of-contract theory.

**IT IS THEREFORE RECOMMENDED THAT**:

Defendants' Motion to Dismiss Under Fed. R. Civ. P. 12(B)(6) (Doc. #12) be GRANTED, in part, and Plaintiff's negligence claim be dismissed; and, Defendants' Motion to Dismiss be otherwise DENIED.

June 19, 2019　　　　　　　　　　　　　　*s/Sharon L. Ovington*
　　　　　　　　　　　　　　　　　　　　Sharon L. Ovington
　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

# NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).