# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

Andrew I. Dilldine,

        *Plaintiff*,        Case No. 3:18-cv-178

v.

        District Judge Thomas M. Rose

American Airlines Inc., *et al.*,

        Magistrate Judge Sharon Ovington

        *Defendants*.

---

**ENTRY AND ORDER ADOPTING IN PART, REVERSING IN PART REPORT AND RECOMMENDATIONS OF THE MAGISTRATE JUDGE. (ECF 25); PLAINTIFF'S OBJECTION TO THE REPORT AND RECOMMENDATION (ECF 28) IS DENIED; DEFENDANTS' OBJECTION TO THE REPORT AND RECOMMENDATION (ECF 29) IS SUSTAINED; THE COURT GRANTS DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM (ECF 12).**

---

Pending before the Court are Plaintiff Andrew I. Dilldine's Objection (ECF 28) to Magistrate Judge Sharon L. Ovington's Report and Recommendations, (ECF 25), and Defendant American Airlines Inc. and PSA Airlines, Inc.'s Objection (ECF29) to the same. The Report and Recommendation, (ECF 25), would have the Court dismiss a negligence claim that Dilldine pleads, but allow a contract claim under the law of the state of Texas in which Dilldine seeks damages that would include personal injury damages and medical expenses. Dilldine objects to the recommendation that his negligence claim be dismissed;

while Defendants object to the recommendation that Dilldine be allowed to pursue personal injury damages and medical damages stemming from a contract claim.

**Background**

Dilldine purchased a ticket for an American Airlines flight that departed on May 4, 2017 from Dayton International Airport and traveled to Charlotte Douglas International Airport in North Carolina. He boarded his flight with his "life sustaining assistive devices, specifically multiple sterile Total Parenteral Nutrition bags, and multiple vials of liquid vitamins and other medications [], all of which are medications essential to [his] ability to function and receive nourishment." (ECF 2, PageID 30). While the Complaint does not identify Dilldine's medical problems, Defendants state that he "is a severely immunocompromised cancer patient who, at the time of his flight, had only recently been discharged from the hospital after a serious bout of pancreatitis." (ECF 15, PageID 169).

Dilldine stored his medication and ice packs in a clean cooler which he claims complied with the size and weight restrictions for carry-on items. His medication cooler was also secured in compliance with the procedures mandated by the Transportation Security Administration (TSA)—it was marked as "medical supplies" and had been inspected by TSA and taped shut. (ECF 2, PageID 30-31).

When Dilldine reached the boarding gate, an American Airlines or PSA employee told him that his cooler would not fit in the aircraft's overhead compartments "and would have to be checked." Id. at 31. Dilldine informed the employee that he was disabled and that his cooler contained life-sustaining assistive devices and needed to be kept clean and cold. Nevertheless, Dilldine followed the employee's instructions. The employee tagged his

cooler, and he watched other American Airlines and PSA employees load the cooler onto the aircraft.

Upon Dilldine's arrival in North Carolina, his cooler was empty. It had been "manually opened and/or unzipped, the tape removed, the plastic bags were missing." Id. at 31. Most significantly, his "multiple bags and vials of Medication and ice packs were strewn throughout the baggage storage area of the aircraft, baggage cart, and/or on the unloading equipment, such that they were not maintained in a cold, sterile environment and were contaminated." Id.

The haphazard storage of the cooler and its contents—and the resulting contamination of Dilldine's medication—caused him to "sustain[ ] property damage and severe personal injuries, including a severe infection requiring hospitalization…." Id. He consequently "incurred medical expenses, physical pain, and mental anguish." Id.

Dilldine availed himself of an administrative remedy by filing a Complaint with the Department of Transportation under the Air Carrier Access Act. 49 U.S.C. § 41705. The parties do not inform the Court how that proceeding was resolved.

On April 23, 2018, Dilldine filed a complaint in Montgomery County Court of Common Pleas against American Airlines Incorporated and PSA Airlines, Incorporated. (ECF 1). On May 23, 2018, Defendants removed the action to federal court. On October 31, 2018, Defendants moved to dismiss.

**Analysis**

Dilldine's Complaint advances two claims: negligence and breach of a contract of carriage. The negligence claim rests on his assertion that Defendants "owed specific duties to

[him] from the Air Carrier Access Act…," and related regulations. (ECF 2, PageID 31, ¶15) Defendants assert Plaintiff's negligence claim is preempted by the Air Carrier Access Act.

With regard to Plaintiff's negligence claim, the Court has reviewed the findings of the Magistrate Judge and, pursuant to 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b), this Court has made a *de novo* review of the record in this case. The Court **ADOPTS** the Report and Recommendations (ECF 25) insofar as it recommends that Plaintiff's negligence claim be dismissed.

The Court has also considered Plaintiff's claim for contract damages, the Magistrate Judge's Report and Recommendation and Defendants' Objections thereto.

Dilldine asserts in his Complaint that the ticket he purchased before his flight created a contract of carriage with the express or implied duty to safely deliver him and his medications and assistive devices to Charlotte, North Carolina. He claims that Defendants breached these duties and as direct result, he suffered injuries, losses, and damages. The contract of carriage identifies Texas law as governing its terms and interpretations. (Doc. 12, PageID 128).

Defendants contend that its Conditions of Carriage limits Dilldine's recovery "for loss, damage or delayed delivery of checked baggage, including transfer baggage, to the actual value of the baggage or $3,500, whichever is less …." (Doc. 12, PageID 88). As the Magistrate Judge notes, although the contract of carriage generally limits Defendant American's liability for loss, damage or delayed delivery of checked baggage, these limitations are subject to an exception: "Customers with disabilities travelling with wheelchairs or other assistive devices are exempt from liability restrictions for loss, damage or delays to these items." (Doc. 12, PageID 115).

4

Dilldine's "assistive devices," including his medications, fit within this exemption from liability limitations. See 14 C.F.R. 382.3 (defining "assistive device" to include "any piece of equipment that assists a passenger with a disability to cope with the effects of his or her disability. Such devices are intended to assist a passenger with a disability to hear, see…, or perform other functions of daily life, and may include medical devices and medications."). Dilldine's Complaint asserts sufficient facts to plausibly show that at least his medications are assistive devices. Dilldine's allegations bring his breach-of-contract claim within the contract of carriage's exclusion from its liability limitations for loss, damage or delays to a Dilldine's assistive devices.

However, Dilldine's Complaint seeks to recover—as a direct result of Defendants' breach of contract—his "injuries, losses and damages …." (Doc. 2, PageID 34). These damages partially include his "reasonable and necessary medical expenses in excess of $82,547.32." Id.

On the question of contract damages, the Magistrate Judge concluded:

> Without a more specific discussion in parties' cases, or in the parties' memoranda, it is premature to resolve whether, as a matter of Texas law, Dilldine may recover his personal-injury damages, including his medical expenses, under a breach-of-contract theory.

ECF 25, PageID 254.

Courts have a duty to resolve a question properly raised in a motion to dimiss. See *Timothy Ballard & Demaxx Inc. v. Bank of Am. Corp.*, No. 1:13-CV-4011-ODE-RGV, 2014 WL 12284028 (N.D. Ga. Oct. 30, 2014) (citing *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353 (11th Cir. 1997) ("the staying of pre-trial deadlines upon the filing of a motion to

dismiss is…based…on the basic interest in avoiding unnecessary costs and preserving scarce judicial resources.").

In Texas, "Consequential damages for breach of contract are not recoverable unless the parties contemplated at the time they made the contract that such damages would be a probable result of the breach." 28 Tex. Jur. Damages § 71 (3) (citing *Basic Capital Management, Inc. v. Dynex Commercial, Inc*., 348 S.W.3d 894, 901 (Tex. 2011)). In *Basic Capital Management*, the Supreme Court of Texas proceeded to quote the *Restatement (Second) of Contracts*,

> (1) Damages are not recoverable for loss that the party in breach did not have reason to foresee as a probable result of the breach when the contract was made.
>
> (2) Loss may be foreseeable as a probable result of a breach because it follows from the breach
>
> (a) in the ordinary course of events, or
>
> (b) as a result of special circumstances, beyond the ordinary course of events, that the party in breach had reason to know.
>
> (3) A court may limit damages for foreseeable loss by excluding recovery for loss of profits, by allowing recovery only for loss incurred in reliance, or otherwise if it concludes that in the circumstances justice so requires in order to avoid disproportionate compensation.

*Basic Capital Mgmt., Inc. v. Dynex Commercial, Inc*., 348 S.W.3d 894, 902 (Tex. 2011).

Here, Plaintiff alleges facts that make it clear Defendants did not have reason to know of his special circumstances at the time they entered into their contract. Dilldine asserts in his Complaint that the ticket he purchased before his flight created a contract of carriage with the express or implied duty to safely deliver him and his medications and assistive devices to

6

Charlotte, North Carolina.  Defendants only learned of Dilldine's medicines at the boarding gate.  While Dilldine informed the airline at this point that "his cooler contained life-sustaining assistive devices and needed to be kept clean and cold," this was long past the time when the parties are alleged to have formed their contract.  There is no evidence Defendants would have contracted to transport Plaintiff's bag if it understood that they might be held to compensate for the loss of someone's life should their baggage-handling processes fail to deliver.  Indeed, Defendants would likely have negotiated obligations on Plaintiff's part, allowing them a cross claim for breach of such conditions, avoiding the situation they here decry of not being able to allege contributory negligence on Plaintiff's part.

Thus, with regard to Plaintiff's breach of contract claim, the Court adopts the Magistrate Judge's Report and Recommendation that Plaintiff is not limited to $3,500 contractual damages.  However, the Court further rules that Plaintiff may not recover consequential damages.  Plaintiff's recovery is limited to the economic value of his luggage, including the cooler and its contents, however much that may be.

**Conclusion**

The Court **ADOPTS** the Report and Recommendations (ECF 25) insofar as it recommends that Plaintiff's negligence claim be dismissed and Plaintiff's objection to the Report and Recommendation (ECF 28) is **DENIED**.  As to Plaintiff's Breach of Contract claim, Defendants' Objection to the Report and Recommendation (ECF 29) is **SUSTAINED**.

The Court **GRANTS** Defendants' Motion to Dismiss for Failure to State a Claim. (ECF 12).  Plaintiff's negligence claims in the First Count of the Complaint, arising under the Air Carrier Access Act of 1986, are hereby **DISMISSED** as there is no private right of action

created by the Act.  With regard to Plaintiff's Breach of Contract claim, it is **ORDERED** that, pursuant to the Conditions of Carriage and the federal regulations promulgated under the Air Carrier Access Act, Plaintiff's monetary damages are limited to the actual value of any lost or damaged "assistive devices."  Plaintiff's Breach of Contract claim for consequential damages is **DISMISSED**.  Plaintiff shall produce a statement of damages setting forth the actual value of the items lost or damage in connection with the subject matter of this litigation within thirty days.

**DONE** and **ORDERED** this Monday, August 12, 2019.

**s/THOMAS M. ROSE**

_____

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE